**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CIVIL DIVISION**

**DONNA FINKEL and JOHN CIVETTI**          CASE NO.

                  Plaintiffs,

                                  **TRIAL BY JURY DEMANDED**

      vs.

**M&T BANK**,

    -and-

**BAYVIEW LOAN SERVICING, LLC**,

    -and-

**TRANSUNION LLC**,

    -and-

**EXPERIAN INFORMATION SOLUTIONS, INC.**,

    -and-

**EQUIFAX INC.**

                  Defendants.

_____/

**COMPLAINT FOR DAMAGES WITH JURY DEMAND**

Plaintiffs Donna Finkel and John Civetti, through counsel, for their Complaint against

Defendants M&T Bank, Bayview Loan Servicing, LLC, TransUnion LLC, Experian Information

Solutions, Inc., and Equifax Inc., state:

**PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiffs Donna Finkel and John Civetti (collectively, "Plaintiffs") are the owners of residential real property, located at and commonly known as 801 N. Victoria Park Road, Ft. Lauderdale, FL 33304 (the "Home").

2.      Plaintiffs currently maintain the Home as their primary, principal residence and have maintained the Home as such for all times relevant to the allegations of this Complaint.

3.      Defendant Bayview Loan Servicing, LLC ("Bayview") is the master servicer of a note (the "Note") and a mortgage on the Home that allegedly secures the Note (the "Mortgage") (collectively referred to hereinafter as the "Loan"). The Loan is attached as *Exhibit 1*.

4.      Bayview has been the master servicer of the Loan since February 15, 2014, when Bayview acquired servicing rights to the Loan from non-party J.P. Morgan Chase Bank.

5.      Defendant M&T Bank ("M&T") is a previous subservicer of the Loan having been contracted by Bayview to perform certain aspects regarding the servicing of the Loan.

6.      M&T was the subservicer of the Loan from February 15, 2014 until M&T transferred subservicing of the Loan to Bayview effective October 16, 2018.

7.      Defendant TransUnion LLC ("TransUnion") regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports.

8.      Defendant Experian Information Solutions, Inc. ("Experian") regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports.

9.      Defendant Equifax Inc. ("Equifax") regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports.

10.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA), and the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (FCRA).

11.     This Court has supplemental jurisdiction to hear any and all state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

12.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

13.     This action is primarily filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) and implemented pursuant to 12 U.S.C. § 2605(f) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq.* ("Regulation X").

14.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

15.     Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

16.     The Loan in the instant matter is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

17.     Congress enacted the FCRA, to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

18.     The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harm that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

19.     Plaintiffs bring this action to challenge the actions of Defendants with regard to erroneously reporting derogatory credit information. Defendants M&T and Bayview, based on the allegations below, breached their contract with Plaintiffs which triggered the erroneously reported derogatory credit information.

20.     Defendants TransUnion, Experian, and Equifax (the "CRAs") failed to properly investigate Plaintiffs' disputes which directly caused damage to Plaintiffs' creditworthiness

which in turn has directly impacted the interest rates of credit obtained by the Plaintiffs since the Defendants failed to investigate.

21.     Congress enacted the FDCPA to prohibit the "[u]se of abusive, deceptive, and unfair debt collection practices." 15 U.S.C § 1692(a).

22.     Plaintiffs assert claims for relief against Defendants for breaches of the specific rules under Regulation X, the FCRA, and the FDCPA as set forth, *infra*.

23.     Plaintiffs have a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f), the FCRA pursuant to 15 U.S.C. § 1681o, and the FDCPA pursuant to 15 U.S.C. § 1692k(a) for the claimed breaches and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

24.     Plaintiffs additionally assert a common law claim for breach of contract.

## FACTUAL BACKGROUND

25.     On November 22, 2017, Plaintiffs filed a complaint against M&T and Bayview in the United States District Court for the Southern District of Florida, otherwise known as *Donna Finkel, et al. v. M&T Bank, et al.*, Case No. 0:17-cv-62305-UU (the "2017 Lawsuit"). A copy of the 2017 Lawsuit Docket is attached as ***Exhibit 2***.

26.     The 2017 Lawsuit involved, in part, Plaintiffs' claims against M&T and Bayview for various alleged servicing violations related to the Loan. Specifically, the Complaint alleged that M&T did not send timely mortgage statements, improperly increased Plaintiffs' monthly payment amount, and manufactured a default by processing Plaintiffs' payments as partial payments. A copy of the Complaint in the 2017 Lawsuit is attached as ***Exhibit 3***.

27.     On February 15, 2018, counsel for Plaintiffs, The Advocacy Group, filed a Notice of Change in Address in the 2017 Lawsuit, notifying M&T and Bayview of The Advocacy Group's new address. A copy of the Notice of Change in Address is attached as *Exhibit 4*.

28.     In July 2018, Plaintiffs, M&T, and Bayview filed a Joint Notice of Settlement in the 2017 Lawsuit informing the Court that the parties reached a confidential settlement agreement (the "Settlement Agreement") to resolve the Action. The Settlement Agreement became effective as of June 29, 2018 when the final signature on the Settlement Agreement was signed.

29.     While the full terms of the Settlement Agreement are confidential, in Paragraph H of the Settlement Agreement, M&T and Bayview agreed within 10 business days of the effective date of the Settlement Agreement to send written or electronic notice to the CRAs reporting that Plaintiffs' Loan was paid as agreed from March 2015 to June 2018 and requesting the removal of all late reporting on Plaintiffs' Loan from November 19, 2014 to March 2015.

30.     Further, Paragraph E of the Settlement Agreement provided that M&T and Bayview would remove all late charges and any other corporate advances assessed to the Loan and credit three payments to bring the Loan current and due and owing for the July 1, 2018 payment, with no past-due amounts.

31.     While awaiting mortgage statements from M&T, Plaintiffs made each and every payment of $2,167.62. A copy of Bayview's Customer Account Activity Statement is attached as *Exhibit 5*.

32.     On or about September 27, 2018, M&T sent Plaintiffs a notice of servicing transfer (the "Notice of Servicing Transfer") stating that Bayview would begin servicing the

Loan effective October 16, 2018. Plaintiffs first learned that M&T raised their monthly payment amount to $2,290.27 upon receipt of the Notice of Servicing Transfer. A copy of the Notice of Servicing Transfer is attached as ***Exhibit 6***.

33.     On or about October 5, 2018, M&T sent a mortgage statement to Plaintiffs wherein M&T claimed that Plaintiffs were behind on their monthly mortgage payment by $122.65. A copy of the October 5, 2018 mortgage statement is attached as ***Exhibit 7***.

34.     On or about November 11, 2018 and June 10, 2019, Bayview sent Plaintiffs correspondence notifying them of the availability of homeownership counseling. A copy of various delinquency correspondences is attached as ***Exhibit 8***.

35.     On or about November 12, 2018, Bayview sent Plaintiffs correspondence stating that their payment is past due. *See Exhibit 8*.

36.     On or about January 2, March 5, May 3, 2019, and July 3, 2019, Bayview sent Plaintiffs correspondence offering information related to preventing foreclosure. *See Exhibit 8*.

37.     On or about January 22, 2019, Bayview performed accounting adjustments on the Loan where Bayview took $122.65 of Plaintiffs' monthly payment held in suspense and applied it to the escrow account. Instead of being $122.65 behind according to Bayview, Bayview now claimed that Plaintiffs were behind by $245.30. A copy of the January 23, 2019 mortgage statement is attached as ***Exhibit 9***.

38.     On or. about January 24, February 6, April 4, April 9, June 10, and July 3, 2019, Bayview sent Plaintiffs correspondences stating:

> This letter is sent to notify you that your loan has been assigned to a specialized team who will provide you with expert and personalized service to help your mortgage payments back on track.

> Our records indicate that one or more payments are now outstanding which means that your loan is at risk of going into default – a situation that can have serious consequences for your credit score and credit history. Default can also lead to foreclosure.

*See Exhibit 8*.

### PLAINTIFFS' ATTEMPT TO HAVE M&T CORRECT ERRORS

39.     On or about November 13, 2018, Plaintiffs, through counsel, sent a notice of error to M&T (the "M&T NOE") informing M&T that it had failed to abide by the terms of the Settlement Agreement, failed to send Plaintiffs mortgage statements, did not notify Plaintiffs of a mortgage payment change, and imposed fees or charges on the Loan without a reasonable basis. A copy of the M&T NOE is attached as ***Exhibit 10***.

40.     The M&T NOE provided clear instructions to M&T as to how it should respond and the consequences if it failed to respond. *See Exhibit 10*.

41.     The M&T NOE was sent to M&T at the address designated by M&T for receipt of notices of error, which is M&T Bank, P.O. Box 62986, Baltimore, MD 21264-2986 (the "M&T Address"). *See* M&T's pertinent website at: https://www.mtb.com/mortgages-loans/mortgages/my-mortgage-info/payment-correspondence-addresses (visited Nov. 13, 2018). A printed version of this page is attached as ***Exhibit 11***.

42.     M&T received the M&T NOE on November 18, 2018 at the M&T Address. A copy of the USPS tracking information is attached as ***Exhibit 12***.

43.     On or about November 16, 2018, Plaintiffs, through counsel, sent a request for information to M&T ("M&T RFI #1") requesting, *inter alia*, "A detailed copy of [M&T's] last two (2) analyses of the escrow account of the mortgage." A copy of M&T RFI #1 is attached as ***Exhibit 13***.

44.     On or about November 16, 2018, Plaintiffs, through counsel, sent a request for information to M&T ("M&T RFI #2") requesting, *inter alia*, "The name, address, and appropriate contact information for the current owner or assignee of the above-referenced mortgage loan." A copy of M&T RFI #2 is attached as ***Exhibit 14***.

45.     On or about November 16, 2018, Plaintiffs, through counsel, sent a request for payoff statement to M&T ("M&T RFI #3"). A copy of M&T RFI #3 is attached as ***Exhibit 15***.

46.     On or about November 16, 2018, Plaintiffs, through counsel, sent a request for information to M&T ("M&T RFI #4") requesting information related to compliance with 12 C.F.R. § 1024.41 and loss mitigation. A copy of M&T RFI #4 is attached as ***Exhibit 16***.

47.     Plaintiffs sent M&T RFI #1, M&T RFI #2, M&T RFI #2, and M&T RFI #4 (the "M&T RFIs") to M&T at the M&T Address and M&T received each of the M&T RFIs at the M&T Address on November 19, 2018. A copy of the USPS tracking information is attached as ***Exhibit 17***.

48.     On or about January 24, 2019, M&T responded to the M&T NOE and M&T RFI #1, M&T RFI #3, and M&T RFI #4[1] (the "M&T RESPA Response"). Through the M&T RESPA Response, M&T states:

> [Plaintiffs] were notified of their mortgage payment change in the monthly billing statements. Attached are copies of all monthly mortgage statements from July 2018 to date. An escrow analysis was completed on June 25, 2018, which raised the payment to $2,290.27. Based on the escrow balance of $2,842.48 at the time of the analysis, and the determination that $4,746.58 was required at the time to pay the taxes and insurance for the year, there was a shortage of $1,904.10.

A copy of the M&T RESPA Response is attached as ***Exhibit 18***.

---

[1] M&T did not respond to M&T RFI #2 through the M&T RESPA Response.

49.    The contents of the M&T RESPA Response and the Response to the Bayview NOE, *infra*, are contradictory as Bayview claims Plaintiffs' monthly payments were increased in September 2018, while M&T states they were increased in June 2018. *See Exhibit 22, infra.*

50.    Enclosed with the M&T RESPA Response were mortgage statements for July, August, and September 2018, each of which were labeled "REPRESENTATION OF PRINTED DOCUMENT". M&T mailed the mortgage statements to Unit 3 Suite 311, 333 Las Olas Way C, Fort Lauderdale, FL 33301, or The Advocacy Group's prior address. Despite the fact that The Advocacy Group filed a Notice of Change in Address in the 2017 Lawsuit and M&T received service of the filing on February 15, 2018, M&T did not mail these mortgage statements to the correct address. M&T RESPA Response shows that M&T did not provide notice to Plaintiffs about the change to their mortgage payment amount. *See Exhibit 18.*

51.    M&T provided a Customer Account Activity Statement with the M&T RESPA Response. Based on the Customer Account Activity Statement, M&T believed that the escrow balance was $2,215.83 as of June 20, 2018. As the Customer Account Activity Statement conflicts with the above paragraph from the M&T RESPA Response, it is not clear that M&T completed an escrow account analysis on June 25, 2018, or if it did, what numbers it was using. *See Exhibit 18.*

52.    M&T failed to provide a copy of the June 25, 2018 escrow account analysis with the M&T RESPA Response, despite M&T RFI #1 requesting, *inter alia*, "A detailed copy of [M&T's] last two (2) analyses of the escrow account of the mortgage." *See Exhibits 13 and 18.*

53.    M&T's contradictory and incomplete M&T RESPA Response indicates that M&T did not perform a reasonable investigation into Plaintiffs' alleged errors. M&T would not

claim that Plaintiffs "were notified" of the mortgage payment increase if it actually reviewed the Notice of Change in Address in its file, especially when Plaintiffs asserted an error for M&T's failure to mail mortgage statements.

54.     The failure to provide information related to the June 25, 2018 escrow analysis has rendered it impossible for Plaintiffs to reasonably determine what their payment should have been beginning on August 1, 2018, were it not for M&T's breach of the Loan, and has hindered their ability to determine what is actually due and owing on the Loan.

### PLAINTIFFS' ATTEMPT TO HAVE BAYVIEW CORRECT ERRORS

55.     On or about November 13, 2018, Plaintiffs, through counsel, sent a notice of error to Bayview (the "Bayview NOE") informing Bayview that it had failed to abide by the terms of the Settlement Agreement, failed to send Plaintiffs mortgage statements, did not notify Plaintiffs of a mortgage payment change, and imposed fees or charges on the Loan without a reasonable basis. A copy of the Bayview NOE is attached as ***Exhibit 19***.

56.     The Bayview NOE provided clear instructions to Bayview as to how it should respond and the consequences if it failed to respond. *See Exhibit 19*.

57.     The Bayview NOE was sent to Bayview at the address designated by Bayview for receipt of notices of error, which is Bayview Loan Servicing, LLC, Customer Support, 4425 Ponce de Leon Boulevard, 5th Floor, Coral Gables, FL 33146 (the "Bayview Address"). See M&T's pertinent website at: https://www.bayviewloanservicing.com/contact-us (visited Nov. 13, 2018). A printed version of this page is attached as ***Exhibit 20***.

58.     Bayview received the Bayview NOE on November 19, 2018 at the Bayview Address. A copy of the USPS tracking information is attached as ***Exhibit 21***.

59.     On or about January 3, 2019, Bayview responded to the Bayview NOE (the "Response to the Bayview NOE"). In the Response to the Bayview NOE, Bayview states:

> Our records indicate that in September 2018 the monthly payments on the loan were increased to $2,290.27. On September 4, 2018, Bayview received a short payment in the amount of $2167.62 which was applied towards the suspense account which is a credit towards the loan. This caused the loan to become thirty (30) days past due.

A copy of the Response to the Bayview NOE is attached as ***Exhibit 22***.

60.     The Response to the Bayview NOE vaguely references that the monthly payments were increased to $2,290.27, a fact that Plaintiffs were well aware of and the reason why Plaintiffs sent Bayview the Bayview NOE. The contents of the Response to the Bayview NOE and the M&T RESPA Response, *supra*, *Exhibit 18*, are contradictory as Bayview claims Plaintiffs' monthly payments were increased in September 2018, while M&T states they were increased in June 2018. Bayview does not even mention the June 25, 2018 escrow account analysis. Further, Bayview makes does not address the improper fees, M&T's failure to send mortgage statements, or the Settlement Agreement at all. *See Exhibit 22*.

61.     On or about November 16, 2018, Plaintiffs, through counsel, sent a request for information to Bayview ("Bayview RFI #1") requesting, *inter alia*, "A detailed copy of [Bayview's] last two (2) analyses of the escrow account of the mortgage." A copy of Bayview RFI #1 is attached as ***Exhibit 23***.

62.     On or about November 16, 2018, Plaintiffs, through counsel, sent a request for information to Bayview ("Bayview RFI #2") requesting information related to the owner, assignee and servicer of the Loan. A copy of Bayview RFI #2 is attached as ***Exhibit 24***.

63.     On or about November 16, 2018, Plaintiffs, through counsel, sent a request for payoff statement to Bayview ("Bayview RFI #3"). A copy of Bayview RFI #3 is attached as *Exhibit 25*.

64.     On or about November 16, 2018, Plaintiffs, through counsel, sent a request for information to Bayview ("Bayview RFI #4") requesting information related to compliance with 12 C.F.R. § 1024.41 and loss mitigation. A copy of Bayview RFI #4 is attached as *Exhibit 26*.

65.     Plaintiffs sent Bayview RFI #1, Bayview RFI #2, Bayview RFI #2, and Bayview RFI #4 (the "2018 Bayview RFIs") to Bayview at the Bayview Address and Bayview received the 2018 Bayview RFIs at the Bayview Address. A copy of the USPS tracking information is attached as *Exhibit 27*.

66.     On December 21, 2018, Bayview sent a response to the 2018 Bayview RFIs that failed to provide "[a] detailed copy of [Bayview's] last two (2) analyses of the escrow account of the mortgage." Bayview provided two escrow account analyses from September 1, 2011 and November 19, 2012 instead of the escrow account analysis from June 25, 2018. A copy of Bayview's response is attached as *Exhibit 28*.

67.     As Bayview had not corrected the errors asserted by the Bayview NOE, on or about April 10, 2019, Plaintiffs, through counsel, sent a request for information to Bayview ("Bayview RFI #5") requesting updated information related to the Loan. A copy of Bayview RFI #5 is attached as *Exhibit 29*.

68.     Plaintiffs sent Bayview RFI #5 to Bayview at the Bayview Address and Bayview received Bayview RFI #5 at the Bayview Address. A copy of the USPS tracking information is attached as *Exhibit 30*.

69.     On or about May 28, 2019, Bayview sent correspondence in response to Bayview

RFI #5 that refused to provide updated information as requested by Bayview RFI #5. A copy of

Bayview's response is attached as ***Exhibit 31***

70.     In the May 28, 2019 response, Bayview claimed that Plaintiffs were behind

$244.85, an error caused by Bayview's January 2019 accounting adjustments on the Loan.

Bayview failed to explain why Plaintiffs are now $244.85 behind. *See Exhibit 31*.

## PLAINTIFFS' ATTEMPT TO HAVE THE CRAS CORRECT INACCURATE AND INCOMPLETE REPORTING

71.     As the effective date of the settlement agreement was June 29, 2018, M&T and

Bayview had until July 16, 2018 to submit the written or electronic notice to the CRAs.

72.     On January 7, 2019 Plaintiff Finkel obtained her credit report from each of the

CRAs to review each of them to see if M&T and/or Bayview had remitted the written or

electronic notice contemplated in the Settlement Agreement.

73.     On January 8, 2019 Plaintiff Civetti obtained his credit report from each of the

CRAs to review each of them to see if M&T and/or Bayview had remitted the written or

electronic notice contemplated in the Settlement Agreement.

74.     When Plaintiff Finkel reviewed the reports from each CRA she was troubled to

see that each report contained the following erroneous information:

a.  The M&T Tradeline did not list all payments between March 2015 through
    June 2018 as "paid as agreed". ***See Exhibit 32 (Equifax January 7, 2019
    reporting page for M&T); Exhibit 33 (Experian January 7, 2019 reporting
    page for M&T); Exhibit 34 (TransUnion January 8, 2019 reporting page
    for M&T)***;

b.  The M&T tradeline did not list the payments for November 2014 and
    December 2014 as No Reporting. *Id.*

    c.    The M&T tradeline reported as 30 days late and amount due of $3,072.00 for the month of April 2018. *Id.*

    d.    The M&T tradeline listed the following months on each report as 120 days late: June 2014, September 2014, October 2014, November 2014, and December 2014. *Id.*

75.    When Plaintiff Civetti reviewed his reports from Experian and TransUnion he was troubled to see that his reports from Experian and TransUnion contained the same erroneous information as Plaintiff Finkel's reports as stated in Paragraph 74. ***See Exhibit 35 (Experian January 8, 2019 reporting page for M&T); Exhibit 36 (TransUnion January 8, 2019 reporting page for M&T)***.

76.    On February 7, 2019 Plaintiff Finkel sent a Notice of Dispute to Experian, Equifax, and TransUnion separately to dispute the erroneous information on the M&T Tradeline from her January 7, 2019 reports (the "Finkel Disputes"). An unsigned copy of the dispute letters to Experian, Equifax, and TransUnion respectively are attached as ***Exhibits 37, 38, and 39***.

77.    On February 7, 2019 Plaintiff Civetti sent to Equifax and TransUnion separately to dispute the erroneous information on the M&T tradeline from his January 8, 2019 reports (the "Civetti Disputes"). An unsigned copy of the dispute letters to Experian and TransUnion respectively are attached as ***Exhibits 40 and 41***.

78.    Each of the Finkel Disputes was sent to each respective CRAs designated address for receipt of written disputes. *See Exhibits 37, 38, and 39*.

79.    Both of the Civetti Disputes were sent to Experian and TransUnion respectively at their designated address for receipt of written disputes. *See Exhibits 40 and 41*.

80.    Each of the Finkel Disputes and both of the Civetti Disputes sent to each respective CRAs contained a specific dispute for Experian, Equifax, and TransUnion to

investigate with respect to M&T's tradeline. The specific dispute language in all of the Finkel

Disputes and the Civetti Disputes was as follows:

> **"DISPUTE #1 – Creditor M&T BANK, Account No. 738009159**
>
> **Creditor M&T BANK, Account No. 738009159** – The Mortgage Account Reported by M&T Bank was reported as of January 8, 2019 as "30 days late" and Amount Past due of $3,072.00" for the Month of April 2018 (04/18) and "120 days late" for the months of June 2014 (06/14), September 2014 (09/14), October 2014 (10/14), November 2014 (11/14) and December 2014 (12/14)."

*Id.*

81.     Each of the Finkel Disputes and both of the Civetti Disputes sent to each of the

respective CRAs contained a specific request to investigate along with a recommended outcome.

The specific language in all of the Finkel Disputes and the Civetti Disputes was as follows:

> **I ask that you initiate an investigation into this disputed tradeline with Creditor M&T Bank based on a Universal Data Form submitted by M&T Bank between July 15, 2018 and August 30, 2018 which would have listed the account as "paid as agreed" for the payments due for March 2015 through June 2018 as well as listing no reporting on the account for the months of November 2014 and December 2014. In addition to the Universal Data Form, enclosed is proof of the payments tendered for June 2014, September 2014 and Octber 2014.**
>
> **I ask that you remove all negative payment status for any reported payments from June 2014 to the present time and worst payment status back to "paid as agreed".**

*Id.*

82.     On or about March 12, 2019 Finkel received a response dated March 7, 2019 from

Equifax to her February 7, 2019 dispute which is attached as ***Exhibit 42.*** In Equifax's response

nothing changed with the reporting of the tradeline. *Id.*

83.     On or about March 12, 2019 Finkel received a response dated March 8, 2019 from Experian to her February 7, 2019 dispute which is attached as ***Exhibit 43.*** In Experian's response nothing changed with the reporting of the tradeline. *Id*.

84.     On or about March 12, 2019 Finkel received a response dated March 9, 2019 from TransUnion to her February 7, 2019 dispute which is attached as ***Exhibit 44.*** In TransUnion's response nothing changed with the reporting of the tradeline. *Id*.

85.     On or about March 16, 2019 Civetti received a response dated March 12, 2019 from Experian are to his February 7, 2019 dispute which is attached as ***Exhibit 45.*** In Experian's response nothing changed with the reporting of the tradeline. *Id*.

86.     On or about March 16, 2019 Civetti received a response dated March 12, 2019 from TransUnion are to his February 7, 2019 dispute which is attached as ***Exhibit 46.*** In TransUnion's response nothing changed with the reporting of the tradeline. *Id*.

87.     The reporting as of March 2019 for the M&T tradelines continues to this date and is inconsistent with the terms of the Plaintiffs' settlement agreement with M&T.

## IMPACT AND DAMAGE TO PLAINTIFFS

88.     Despite Plaintiffs having sued M&T and Bayview for the same problem in 2017, making all payments required after the terms of the Settlement Agreement were implemented, and bringing M&T and Bayview's errors to their attention, Bayview still claims that Plaintiffs are behind on the Loan. Due to the actions of M&T and Bayview, Plaintiffs currently remain in a wrongful and false "default" status under the Loan.

89.     M&T and Bayview's actions directly and proximately caused Plaintiffs to suffer actual damages:

a. Bayview is improperly trying to collect $244.85 due to its January 2019 accounting adjustment;

b. The Loan is being assessed charges for attorney advances, statutory expenses, and miscellaneous corporate disbursements;

c. Plaintiffs had to pay legal counsel to submit the RFIs and NOEs to M&T and Bayview, pay postage costs for the mailing of the RFIs and NOEs, and pay legal counsel to review the responses to RFIs and NOEs; and,

d. M&T and Bayview have delayed Plaintiffs' ability to rehabilitate their credit;

e. Based on the allegations above and specifically in Paragraphs 71 through 87, the Plaintiffs have had to incur $34.25 in certified mailing costs for the Finkel Disputes and the Civetti Disputes that they would not have had to incur had M&T sent the correct information to the Credit Reporting Agencies;

f. Plaintiffs suffered extreme emotional distress directly and proximately caused by M&T and Bayview's actions driven by the fear that their Home may be subject to foreclosure, that M&T and Bayview immediately manufactured a delinquency as they were supposed to correct the accounting on the Loan, and at the thought that they have to endure another round of stress and frustration in trying to get M&T and Bayview to correct the same accounting errors as complained about in the Action. Specifically, Plaintiff John Civetti, experienced exasperation of his Crohn's disease, a condition instigated and worsened by stress. Plaintiff, Donna Finkel experienced sleep loss, hair loss and anxiety for which she sought medical care.

90. The actions of Equifax, Experian and TransUnion as to Finkel have directly and proximately caused Plaintiff Finkel to suffer the following actual damages:

a. $20.55 in certified mailing costs to send the Finkel Disputes to each CRA; and

b. Based on the settlement agreement continued delay in the attempt to rehabilitate her credit.

91. The actions of Experian and TransUnion as to Civetti have directly and proximately caused Plaintiff Civetti to suffer the following actual damages:

c. $13.70 in certified mailing costs to send the Civetti Disputes to Experian and TransUnion; and

d. Based on the settlement agreement continued delay in the attempt to rehabilitate his credit.

92.     Throughout this entire ordeal, Plaintiffs have simply wanted to be able to enjoy the benefit of the Settlement Agreement, continue making timely, proper payments on the Loan in order to begin to rehabilitate their credit, review timely notices related to the Loan, and most importantly, remain in the Home without fear of foreclosure.

**PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY M&T**

93.     M&T's actions are part of a pattern and practice of behavior in violation of Plaintiffs' rights and in abdication and contravention of M&T's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA. Specifically, M&T has committed at least (5) five willful violations of RESPA:

a. At least (1) one violation of 12 C.F.R. § 1024.17(i) (Count I);

b. At least (3) three violations of 12 C.F.R. § 1024.36(d) (Count II); and,

c. At least (1) one violation of 12 C.F.R. § 1024.35(e) (Count III).

94.     Further showing M&T's pattern and practice of noncompliance with RESPA, the 2017 Lawsuit alleges that M&T violated 12 C.F.R. § 1024.35 at least (10) ten times and 12 C.F.R. § 1024.36 at least (3) three times. *See Exhibit 3.*

95.     At the time of the filing of this Complaint, M&T has had Seven Hundred Ninety-Two (792) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www .consumerfinance.gov/complaint database/).

96.     At the time of the filing of this Complaint, M&T has had Eight Hundred Forty-Two (842) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account" related to mortgages.

97.     Plaintiffs have reviewed the CFPB's consumer complaint database and has identified other alleged RESPA violations by M&T against other borrowers. In particular, Plaintiffs have reviewed the fifteen (15) consumer complaints attached hereto and identified as **Group Exhibit 47**. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints evidence conduct which demonstrates that M&T has engaged in a pattern and practice of violating RESPA with respect to other borrowers.

**PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY BAYVIEW**

98.     Bayview's actions are part of a pattern and practice of behavior in violation of Plaintiffs' rights and in abdication and contravention of Bayview's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA. Specifically, Bayview has committed at least (3) three willful violations of RESPA:

     a.  At least (2) two violations of 12 C.F.R. § 1024.36(d) (Count IV); and,

     b.  At least (1) one violation of 12 C.F.R. § 1024.35(e) (Count V).

99.     Further showing Bayview's pattern and practice of noncompliance with RESPA, the 2017 Lawsuit alleges that Bayview violated 12 C.F.R. § 1024.35 at least (5) five times. *See Exhibit 3*.

100.     At the time of the filing of this Complaint, Bayview has had Nine Hundred Ten (910) consumer complaints lodged against it nationally, specifically concerning the issue

identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages.

101.    At the time of the filing of this Complaint, Bayview has had Seven Hundred Forty-Two (742) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account" related to mortgages.

102.    Plaintiffs have reviewed the CFPB's consumer complaint database and has identified other alleged RESPA violations by Bayview against other borrowers. In particular, Plaintiffs have reviewed the fifteen (15) consumer complaints attached hereto and identified as ***Group Exhibit 48***. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints evidence conduct which demonstrates that Bayview has engaged in a pattern and practice of violating RESPA with respect to other borrowers.

<u>**COUNT ONE: AGAINST M&T**</u>
**VIOLATION OF 12 C.F.R. § 1024.17(i)**
**(Failure to send a borrower an escrow account analysis)**

103.    Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 102, in their entirety, as if fully rewritten herein.

104.    12 C.F.R. § 1024.17(c)(3) provides, "Upon completing an escrow account analysis, the servicer must prepare and submit an annual escrow account statement to the borrower, as set forth in paragraph (i) of this section."

105.    12 C.F.R. § 1024.17(i) provides, "For each escrow account, a servicer shall submit an annual escrow account statement to the borrower within 30 days of the completion of

the escrow account computation year. The servicer shall also submit to the borrower the previous

year's projection or initial escrow account statement."

106.     12 C.F.R. § 1024.17(i)(2) provides:

> If at the time the servicer conducts the escrow account analysis the
> borrower is more than 30 days overdue, then the servicer is exempt
> from the requirements of submitting an annual escrow account
> statement to the borrower under § 1024.17(i).
>
> …
>
> If the servicer does not issue an annual statement pursuant to this
> exemption and the loan subsequently is reinstated or otherwise
> becomes current, the servicer shall provide a history of the account
> since the last annual statement (which may be longer than 1 year)
> within 90 days of the date the account became current.

107.     According to the M&T RESPA Response, M&T ran an escrow analysis on June

25, 2018.

108.     As the Settlement Agreement was not effective until June 29, 2018, Plaintiffs

were technically more than 30 days overdue as of June 25, 2018.

109.     According to the Settlement Agreement, the Loan became current on July 1,

2018.

110.     Since the Loan became current on July 1, 2018, M&T was required to provide a

history of Plaintiffs' account within 90 days of July 1, 2018, or on or before October 1, 2018.

111.     M&T failed to provide a history of Plaintiffs' account on or before October 1,

2018 in violation of 12 C.F.R. § 1024.17(i).

112.     In the M&T RESPA Response, M&T had to the opportunity to provide Plaintiffs

with any document that shows it complied with 12 C.F.R. § 1024.17(i), but it failed to provide

any escrow analysis statement.

113.    M&T's actions have directly and proximately caused Plaintiffs to suffer actual damages. *See* ¶ 89.

114.    M&T's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Plaintiffs' rights. *See* ¶¶ 93-97.

115.    As a result of M&T's actions, M&T is liable to Plaintiffs for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

116.    Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**COUNT TWO: AGAINST M&T**
**VIOLATIONS OF 12 C.F.R. § 1024.36(d)**

**(Failure to timely and properly provide information related to a borrower's mortgage loan)**

117.    Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 102, in their entirety, as if fully rewritten herein.

118.    12 C.F.R. § 1024.36(a) provides that a request for information may consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

119.    Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

120.    12 C.F.R. § 1024.36(d)(1) provides:

[A] servicer must respond to an information request by either:
   (i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or

(ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

121.    Furthermore, 12 C.F.R. § 1024.36(d)(2)(i) provides:

A servicer must comply with the requirements of paragraph (d)(1) of this section:

(A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and

(B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

122.    M&T RFI #1 and M&T RFI #2 meet the definition of a request for information because both contain Plaintiffs' names, loan number, property address, and request information related to the Loan.

123.    Plaintiffs sent M&T RFI #1 and M&T RFI #2 to M&T at the M&T Address and M&T received M&T RFI #1 and M&T RFI #2 at the M&T Address on November 19, 2018.

124.    M&T RFI #1 requests, *inter alia*, "A detailed copy of your last two (2) analyses of the escrow account of the mortgage."

125.    Pursuant to 12 C.F.R. § 1024.36(d)(2)(i)(B), M&T was required to provide written correspondence to Plaintiffs in response to M&T RFI #1 "not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receive[d] the information request", as contained in M&T RFI #1, in compliance with the requirements of 12 C.F.R. § 1024.36(d)(1).

24

126.    M&T RFI #2 requests, *inter alia*, "The name, address, and appropriate contact information for the current owner or assignee of the above-referenced mortgage loan."

127.    Pursuant to 12 C.F.R. § 1024.36(d)(2)(i)(A), M&T was required to provide written correspondence to Plaintiffs in response to M&T RFI #2 "not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receive[d] the information request", as contained in M&T RFI #2, in compliance with the requirements of 12 C.F.R. § 1024.36(d)(1).

128.    M&T was required to provide the information requested by RFI #2 on or before December 4, 2018.

129.    M&T provided Plaintiffs with the M&T RESPA Response on January 24, 2019.

130.    Through the M&T RESPA Response, M&T failed to provide "[a] detailed copy of your last two (2) analyses of the escrow account of the mortgage" despite claiming that "[a]n escrow analysis was completed on June 25, 2018" and further failed to state any justification as to why M&T did not have to supply such information as would be required by 12 C.F.R. § 1024.36(f).

131.    The failure to provide information related to the June 25, 2018 escrow analysis has rendered it impossible for Plaintiffs to reasonably determine what their payment should have been beginning on August 1, 2018, were it not for M&T's breach of the Loan, and has hindered their ability to determine what is actually due and owing on the Loan.

132.    The M&T RESPA Response contains four headings in response to the M&T NOE (p. 1), M&T RFI #1 (p. 3, first heading), M&T RFI #3 (p. 3, second heading), and M&T RFI #4 (p. 2). Notably, the M&T RESPA Response does not address M&T RFI #2 and failed to provide

"[t]he name, address, and appropriate contact information for the current owner or assignee of the above-referenced mortgage loan" and further failed to state any justification as to why M&T did not have to supply such information as would be required by 12 C.F.R. § 1024.36(f).

133.    M&T's actions, in failing to provide a complete written correspondence to Plaintiffs in response to M&T RFI #1 and a timely and complete written correspondence in response to M&T RFI #2 by its response deadlines, constitute at least three (3) willful violations of 12 C.F.R. § 1024.36(d).

134.    M&T's actions have directly and proximately caused Plaintiffs to suffer actual damages. *See* ¶ 89.

135.    M&T's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Plaintiffs' rights. *See* ¶¶ 93-97.

136.    As a result of M&T's actions, M&T is liable to Plaintiffs for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

137.    Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT THREE: AGAINST M&T
## VIOLATION OF 12 C.F.R. § 1024.35(e)

**(Failure to perform a reasonable investigation into asserted errors)**

138.    Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 102, in their entirety, as if fully rewritten herein.

139.    12 C.F.R. § 1024.35(a) provides that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and

26

that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

140.    Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

141.    12 C.F.R. § 1024.35(e)(1)(i) provides that a servicer must respond to a notice of error by either:

> (A)   Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
>
> (B)   Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

142.    The M&T NOE meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a) because it contains Plaintiffs' names, loan number, property address, and states the errors Plaintiffs believed to have occurred. See Exhibit ###.

143.    Through the M&T NOE, Plaintiffs alleged that M&T committed at least four covered errors. The M&T NOE asserted covered errors pursuant to:

> a.   12 C.F.R. § 1024.35(b)(2) for M&T's failure to properly apply Plaintiffs' payments;
>
> b.   12 C.F.R. § 1024.35(b)(5) for M&T's imposition of fees or charges, namely a property inspection fee of $14.00, for which it had no reasonable basis to impose on the Loan;

    c.  12 C.F.R. § 1024.35(b)(11) for M&T's failure to abide by the terms of the Settlement Agreement; and,

    d.  12 C.F.R. § 1024.35(b)(11) for M&T's failure to send Plaintiffs mortgage statements for July, August, and September 2018;

144.    Plaintiffs sent the M&T NOE to M&T at the M&T Address and M&T received the M&T NOE at the M&T Address on November 18, 2018.

145.    On or about January 24, 2019, M&T sent Plaintiffs the M&T RESPA Response. Attached to the M&T RESPA Response are the three missing mortgage statements for July, August, and September 2018 with 'REPRESENTATION OF PRINTED DOCUMENT" at the top of the first page.

146.    If the three mortgage statements were mailed, M&T mailed them to Unit 3 Suite 311, 333 Las Olas Way C, Fort Lauderdale, FL 33301, or The Advocacy Group's prior address, despite the fact that The Advocacy Group filed a Notice of Change in Address in the 2017 Lawsuit and M&T received service of the filing on February 15, 2018.

147.    Sometime between September 17, 2018 and September 27, 2018, as evidenced by the Notice of Servicing Transfer, M&T realized its error and began sending mortgage statements to Plaintiffs' Home, starting with the October 2018 mortgage statement.

148.    However, M&T falsely states that Plaintiffs "were notified of their mortgage payment change in the monthly billing statements," when upon a reasonable investigation M&T would had discovered that it did not send the monthly mortgage statements to the correct address, and therefore failed to notify Plaintiffs of any change in payment and wrongfully held Plaintiffs' payments in suspense, effectively putting them one month behind on the Loan.

149.    Further, if M&T had performed a reasonable investigation into the errors asserted by the M&T NOE, it would have discovered that it never provided Plaintiffs with an escrow analysis statement for the escrow analysis completed on June 25, 2018.

150.    M&T's actions have directly and proximately caused Plaintiffs to suffer actual damages. *See* ¶ 89.

151.    M&T's actions, in failing to perform a reasonable investigation into and correct the errors alleged in the M&T NOE constitutes at least one (1) willful violations of 12 C.F.R. § 1024.35(e).

152.    M&T's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Plaintiffs' rights. *See* ¶¶ 93-97.

153.    As a result of M&T's actions, M&T is liable to Plaintiffs for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

154.    Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

### COUNT FOUR: AGAINST BAYVIEW
### VIOLATIONS OF 12 C.F.R. § 1024.36(d)

**(Failure to timely and properly provide information related to a borrower's mortgage loan)**

155.    Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 102, in their entirety, as if fully rewritten herein.

156.    12 C.F.R. § 1024.36(a) provides that a request for information may consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

157.    Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

158.    12 C.F.R. § 1024.36(d)(1) provides:

[A] servicer must respond to an information request by either:
(i)   Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or
(ii)  Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

159.    Furthermore, 12 C.F.R. § 1024.36(d)(2)(i) provides:

A servicer must comply with the requirements of paragraph (d)(1) of this section:
(A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and
(B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

160.    Bayview RFI #1 meets the definition of a request for information because it contains Plaintiffs' names, loan number, property address, and requests information related to the Loan.

161.    Bayview RFI #5 meets the definition of a request for information because it contains Plaintiffs' names, loan number, property address, and requests information related to the Loan.

162.     Plaintiffs sent Bayview RFI #1 and Bayview RFI #5 to Bayview at the Bayview Address and Bayview received Bayview RFI #1 and Bayview RFI #5 at the Bayview Address.

163.     Bayview RFI #1 requests, *inter alia*, "A detailed copy of your last two (2) analyses of the escrow account of the mortgage."

164.     Bayview provided Plaintiffs with a response dated December 21, 2018. Through the response, Bayview failed to provide "[a] detailed copy of [Bayview's] last two (2) analyses of the escrow account of the mortgage" despite M&T completing an escrow analysis on June 25, 2018. Bayview provided escrow analyses from 2011 and 2012. Bayview further failed to state any justification as to why it did not provide the June 25, 2018 escrow analysis as would be required by 12 C.F.R. § 1024.36(f).

165.     Bayview RFI #5 requests updated information related to the Loan and was sent because Bayview refused to correct errors and made accounting adjustments in January 2019.

166.     Bayview provided Plaintiffs with a response dated May 28, 20198. Through the response, Bayview again failed to provide "[a] detailed copy of [Bayview's] last two (2) analyses of the escrow account of the mortgage." Bayview claimed every request was "duplicative" and enclosed previous letters.

167.     Bayview further refused to provide updated accounting information. Bayview failed to state any justification as to why it did not provide updated accounting information or answer Plaintiffs' question as would be required by 12 C.F.R. § 1024.36(f).

168.     The failure to provide information related to the June 25, 2018 escrow analysis has rendered it impossible for Plaintiffs to reasonably determine what their payment should have

been beginning on August 1, 2018, were it not for M&T and Bayview's breach of the Loan, and has hindered their ability to determine what is actually due and owing on the Loan.

169.   Bayview's actions, in failing to provide a complete written correspondence to Plaintiffs in response to Bayview RFI #1 and Bayview RFI #5 by its response deadlines, constitute at least two (2) willful violations of 12 C.F.R. § 1024.36(d).

170.   Bayview's actions have directly and proximately caused Plaintiffs to suffer actual damages. *See* ¶ 89.

171.   Bayview's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Plaintiffs' rights. *See* ¶¶ 98-102.

172.   As a result of Bayview's actions, Bayview is liable to Plaintiffs for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

173.   Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT FIVE: AGAINST BAYVIEW
## VIOLATION OF 12 C.F.R. § 1024.35(e)

### (Failure to perform a reasonable investigation into asserted errors)

174.   Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 102, in their entirety, as if fully rewritten herein.

175.   12 C.F.R. § 1024.35(a) provides that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

176.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

177.     12 C.F.R. § 1024.35(e)(1)(i) provides that a servicer must respond to a notice of error by either:

> (A)  Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
>
> (B)  Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

178.     The Bayview NOE meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a) because it contains Plaintiffs' names, loan number, property address, and states the errors Plaintiffs believed to have occurred. See Exhibit ###.

179.     Through the Bayview NOE, Plaintiffs alleged that Bayview committed at least five covered errors. The Bayview NOE asserted covered errors pursuant to:

> a.  12 C.F.R. § 1024.35(b)(2) for Bayview's failure to properly apply Plaintiffs' payments;
>
> b.  12 C.F.R. § 1024.35(b)(3) for Bayview's failure to credit Plaintiffs' November 2018 payment to the Loan;
>
> c.  12 C.F.R. § 1024.35(b)(5) for M&T's imposition of fees or charges, namely a property inspection fee of $14.00, for which it had no reasonable basis to impose on the Loan;

      d.   12 C.F.R. § 1024.35(b)(11) for Bayview's failure to abide by the terms of the Settlement Agreement; and,

      e.   12 C.F.R. § 1024.35(b)(11) for M&T's failure to send Plaintiffs mortgage statements for July, August, and September 2018;

180.    Plaintiffs sent the Bayview NOE to Bayview at the Bayview Address and Bayview received the Bayview NOE at the Bayview Address.

181.    On or about January 3, 2019, M&T sent Plaintiffs the Response to the Bayview NOE. The Response to the Bayview NOE vaguely references that the monthly payments were increased. The contents of the Response to the Bayview NOE and the M&T RESPA Response are contradictory as Bayview claims Plaintiffs' monthly payments were increased in September 2018, while M&T states they were increased in June 2018. Bayview does not even mention the June 25, 2018 escrow account analysis. Further, Bayview makes does not address the improper fees, M&T's failure to send mortgage statements, or the Settlement Agreement at all.

182.    Upon a reasonable investigation, Bayview would had discovered that M&T did not send the monthly mortgage statements to the correct address and therefore M&T failed to notify Plaintiffs of any change in payment and wrongfully held Plaintiffs' payments in suspense, effectively putting them one month behind on the Loan.

183.    Further, if Bayview had performed a reasonable investigation into the errors asserted by the Bayview NOE, it would have discovered that M&T never provided Plaintiffs with an escrow analysis statement for the escrow analysis completed on June 25, 2018.

184.    Bayview's actions have directly and proximately caused Plaintiffs to suffer actual damages. *See* ¶ 89.

185.    Bayview's actions, in failing to perform a reasonable investigation into and correct the errors alleged in the Bayview NOE constitutes at least one (1) willful violations of 12 C.F.R. § 1024.35(e).

186.    Bayview's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Plaintiffs' rights. *See* ¶¶ 98-102.

187.    As a result of Bayview's actions, Bayview is liable to Plaintiffs for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

188.    Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

### COUNT SIX: AGAINST EXPERIAN, EQUIFAX, AND TRANSUNION
### VIOLATIONS OF 15 U.S.C. §§ 1681, *et seq*.

### (Failure to conduct a reasonable investigation into the Finkel Disputes)

189.    Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 102, in their entirety, as if fully rewritten herein.

190.    As stated above, *supra*, Finkel sent disputes to Experian, Equifax, and TransUnion on or about February 7, 2019 requesting that each CRA respectively address the following errors:

> **Creditor M&T BANK, Account No. 738009159** – The Mortgage Account Reported by M&T Bank was reported as of January 8, 2019 as "30 days late" and Amount Past due of $3,072.00" for the Month of April 2018 (04/18) and "120 days late" for the months of June 2014 (06/14), September 2014 (09/14), October 2014 (10/14), November 2014 (11/14) and December 2014 (12/14)."

*See Exhibits 37, 38, and 39.*

191.    Each of these disputes was sent by Finkel to each CRA's respective designated address to receive written disputes. *Id.*

192.    Each of the three CRAs knew or should have known that the information referenced in Paragraph 190 was materially misleading as the reports furnished by each CRA respectively contained information that:

    a.  Inaccurately reported the payments due for April 2018 as 30 days late when the correct reporting consistent with the settlement agreement would have been "paid as agreed";

    b.  Inaccurately reported a past due balance of $3,072.00 when the correct reporting consistent with the settlement agreement would have been "paid as agreed";

    c.  Inaccurately reported the payments due for June 2014, September 2014, and October 2014 as "120 days past due" when the correct reporting consistent with the settlement agreement would have been "paid as agreed"; and

    d.  Inaccurately reported the payments due for November 2014 and December 2014 as "120 days past due" when the correct reporting consistent with the settlement agreement would have been "No reporting".

193.    This materially misleading information still being reported by all three CRAs as demonstrated by Equifax's March 7, 2019 response, Experian's March 8, 2019 response, and TransUnion's March 9, 2019 response continues to curtail Finkel's ability to re-establish her credit consistent with the M&T settlement agreement and has proximately caused her to incur $20.55 in certified mailing charges.

194.    Based on the allegations above Equifax failed to notify M&T Bank regarding Plaintiff Finkel's dispute pursuant to 15 U.S.C. § 1681(a)(2).

195.    Based on the allegations above Experian failed to notify M&T Bank regarding Plaintiff Finkel'sursuant to 15 U.S.C. § 1681(a)(2).

196.    Based on the allegations above TransUnion failed to notify M&T Bank regarding Plaintiff Finkel's dispute pursuant to 15 U.S.C. § 1681(a)(2).

197.    Based on the allegations above Equifax failed to conduct a reasonable investigation with respect to the disputed information as to Plaintiff Finkel as required by 15 U.S.C. § 1681s-2(b)(1)(b) and/or § 1681i(a) respectively.

198.    Based on the allegations above Experian failed to conduct a reasonable investigation with respect to the disputed information as to Plaintiff Finkel as required by 15 U.S.C. § 1681s-2(b)(1)(b) and/or § 1681i(a) respectively.

199.    Based on the allegations above TransUnion failed to conduct a reasonable investigation with respect to the disputed information as to Plaintiff Finkel as required by 15 U.S.C. § 1681s-2(b)(1)(b) and/or § 1681i(a) respectively.

200.    Each of the CRA's respective continued incomplete and inaccurate reporting of Plaintiff Finkel's credit history as demonstrated above, in light of its knowledge of the actual errors and omissions was willful. Plaintiff Donna Finkel is eligible for statutory and punitive damages.

201.    The foregoing acts and omissions by each CRA constitute willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681.

202.    As a result of each and every willful violation of the FCRA committed by Equifax, Experian, and TransUnion with respect to the M&T Tradeline, Plaintiff Donna Finkel is entitled to statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable

attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from each Defendant as applicable.

## COUNT SEVEN: AGAINST EXPERIAN AND TRANSUNION
### VIOLATIONS OF 15 U.S.C. §§ 1681, *et seq.*

**(Failure to conduct a reasonable investigation into the Civetti Disputes)**

203.    Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 102, in their entirety, as if fully rewritten herein.

204.    As stated above, *supra*, Civetti sent disputes to Experian and TransUnion on or about February 7, 2019 requesting that each CRA respectively address the following errors:

> **Creditor M&T BANK, Account No. 738009159** – The Mortgage Account Reported by M&T Bank was reported as of January 8, 2019 as "30 days late" and Amount Past due of $3,072.00" for the Month of April 2018 (04/18) and "120 days late" for the months of June 2014 (06/14), September 2014 (09/14), October 2014 (10/14), November 2014 (11/14) and December 2014 (12/14)."

*See Exhibits 40 and 41.*

205.    Each of these disputes was sent by Civetti to Experian and TransUnion's respective designated address to receive written disputes. *Id.*

206.    Experian and TransUnion knew or should have known that the information referenced in Paragraph 204 was materially misleading as the reports furnished by each CRA respectively contained information that:

> a.    Inaccurately reported the payments due for April 2018 as 30 days late when the correct reporting consistent with the settlement agreement would have been "paid as agreed";
>
> b.    Inaccurately reported a past due balance of $3,072.00 when the correct reporting consistent with the settlement agreement would have been "paid as agreed";

    c.   Inaccurately reported the payments due for June 2014, September 2014, and October 2014 as "120 days past due" when the correct reporting consistent with the settlement agreement would have been "paid as agreed"; and

    d.   Inaccurately reported the payments due for November 2014 and December 2014 as "120 days past due" when the correct reporting consistent with the settlement agreement would have been "No reporting".

207.    This materially misleading information still being reported Experian and TransUnion as demonstrated by Experian's March 12, 2019 response and TransUnion's March 12, 2019 response continues to curtail Civetti's ability to re-establish his credit consistent with the M&T settlement agreement and has proximately caused him to incur $13.70 in certified mailing charges.

208.    Based on the allegations above Experian failed to notify M&T Bank regarding Plaintiff Civetti's dispute pursuant to 15 U.S.C. § 1681(a)(2).

209.    Based on the allegations above TransUnion failed to notify M&T Bank regarding Plaintiff Civetti's dispute pursuant to 15 U.S.C. § 1681(a)(2).

210.    Based on the allegations above Experian failed to conduct a reasonable investigation with respect to the disputed information as to Plaintiff Civetti as required by 15 U.S.C. § 1681s-2(b)(1)(b) and/or § 1681i(a) respectively.

211.    Based on the allegations above TransUnion failed to conduct a reasonable investigation with respect to the disputed information as to Plaintiff Civetti as required by 15 U.S.C. § 1681s-2(b)(1)(b) and/or § 1681i(a) respectively.

212.    Each of the CRA's respective continued incomplete and inaccurate reporting of Plaintiff Civetti's credit history as demonstrated above, in light of its knowledge of the actual

errors and omissions was willful. Plaintiff John Civetti is eligible for statutory and punitive damages.

213.    The foregoing acts and omissions by each CRA constitute willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681.

214.    As a result of each and every willful violation of the FCRA committed by Experian, and TransUnion with respect to the M&T Tradeline, Plaintiff John Civetti is entitled to statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from each Defendant as applicable.

## COUNT EIGHT: AGAINST M&T
### VIOLATIONS OF 15 U.S.C. §§ 1681, *et seq*.

**(Failure to furnish correct information on the Finkel and Civetti Reports to the CRAs)**

215.    Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 102, in their entirety, as if fully rewritten herein.

216.    Based on the allegations herein, *supra*, M&T knowingly began furnishing incorrect information pursuant to 15 U.S.C. § 1681s-2(a)(1)(A) regarding Plaintiffs' mortgage loan beginning in July 2014 and continuing until this day. M&T is furnishing information to the credit reports that:

   a.    Does not list all payments between March 2015 through June 2018 as "paid as agreed". *See Exhibits 32, 33, 34, 35, and 36*.

   b.    Does not list the payments for November 2014 and December 2014 as No Reporting. *Id.*

   c.    Reports as 30 days late and amount due of $3,072.00 for the month of April 2018. *Id.*

d. Lists the following months on each report as 120 days late: June 2014, September 2014, October 2014, November 2014, and December 2014. *Id.*

217. This materially misleading information still being furnished by M&T continues to curtail each Plaintiffs' ability to continue to re-establish their individual credit as well as causing the Plaintiffs to incur $34.25 in certified mailing costs to send the five disputes herein, *supra*.

218. Based on the allegations herein M&T continues to furnish the same incorrect information described in Paragraph 216 to Equifax, Experian, and TransUnion on Plaintiff Finkel's Credit Reports.

219. The continued reporting referenced in Paragraph 216 by M&T is being made despite receipt of the disputes from Equifax, Experian, and TransUnion described herein in violation of 11 U.S.C. § 1681s-2(a)(1)(B) as to Plaintiff Donna Finkel.

220. The continued reporting referenced in Paragraph 216 by M&T is being made despite receipt of the disputes from Experian and TransUnion described herein in violation of 11 U.S.C. § 1681s-2(a)(1)(B) as to Plaintiff John Civetti.

221. The foregoing acts and omissions constitute willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681.

222. As a result of each and every willful violation of the FCRA committed by M&T as to the M&T Tradeline on Plaintiff Donna Finkel's Credit File with Experian, Equifax and TransUnion as well as the M&T Tradeline on Plaintiff John Civetti's Credit File with Experian and TransUnion, Plaintiff Donna Finkel and Plaintiff John Civetti are

each entitled to statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from M&T.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Donna Finkel and John Civetti pray that this Court enter its order granting judgment against Defendants M&T Bank, Bayview Loan Servicing, LLC, TransUnion LLC, Experian Information Solutions, Inc., and Equifax Inc. for the following:

- A. Actual damages in an amount to be determined at trial for the allegations contained in all Counts against all Defendants;
- B. Statutory damages of Two Thousand Dollars ($2,000.00) per violation contained in Counts One through Three against M&T
- C. Statutory damages of Two Thousand Dollars ($2,000.00) per violation contained Counts Four and Five against Bayview;
- D. For statutory damages against Experian, Equifax and TransUnion, as applicable, pursuant to 15 U.S.C. 1681n(a)(1) for the allegations contained in Count Six as to Plaintiff Donna Finkel;
- E. For statutory damages against Experian and TransUnion, as applicable, pursuant to 15 U.S.C. 1681n(a)(1) for the allegations contained in Count Seven as to Plaintiff John Civetti;
- F. For statutory damages against M&T pursuant to 15 U.S.C. 1681n(a)(1) for the allegations contained in Count Eight as to Plaintiff Donna Finkel;
- G. For statutory damages against M&T pursuant to 15 U.S.C. 1681n(a)(1) for the allegations contained in Count Eight as to Plaintiff John Civetti;
- H. For an award of punitive damages against Experian, Equifax and TransUnion, as applicable, may allow pursuant to 15 U.S.C. § 1681n(a)(2) for the allegations contained in Count Six as to Plaintiff Donna Finkel;
- I. For an award of punitive damages against Experian and TransUnion, as applicable, may allow pursuant to 15 U.S.C. § 1681n(a)(2) for the allegations contained in Count Seven as to Plaintiff John Civetti;
- J. For an award of punitive damages against M&T may allow pursuant to 15 U.S.C. § 1681n(a)(2) for the allegations contained in Count Eight as to Plaintiff Donna Finkel;
- K. For an award of punitive damages against M&T may allow pursuant to 15 U.S.C. § 1681n(a)(2) for the allegations contained in Count Eight as to Plaintiff John Civetti;
- L. Reasonable attorneys' fees and costs as to all Counts against all Defendants as applicable; and
- M. Such other relief which this Court may deem appropriate.

## JURY DEMAND

Plaintiffs hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

Dated: July 22, 2019

Respectfully submitted:

/s/ Jessica L. Kerr
Jessica L. Kerr
Florida Bar no. 92810
THE ADVOCACY GROUP
200 S.E. 6th Street, Ste. 504
Fort Lauderdale, Florida 33301
Telephone: 954-282-1858
Facsimile: 844-786-3694
service@advocacypa.com


/s/ Brian D. Flick
Brian D. Flick
OHIO BAR NO. 081605
(pro hac vice to be filed)
Dann Law
P.O. Box 6031040
Cleveland, OH 44103
Telephone: 216-373-0539
Facsimile: 216-373-0536
notices@dannlaw.com
